IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| In the Matter of<br><br>NOAH D., by and through his Parent, LISA D.,<br>    Plaintiffs,<br><br>vs.<br><br>DEPARTMENT OF EDUCATION STATE OF HAWAII,<br>    Defendant. | CIVIL NO. 12-00459 DKW RLP<br><br>**ORDER REVERSING AND REMANDING THE ADMINISTRATIVE HEARINGS OFFICER'S JULY 11, 2012 FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECISION** |

**ORDER REVERSING AND REMANDING THE ADMINISTRATIVE HEARINGS OFFICER'S JULY 11, 2012 FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECISION**

**INTRODUCTION**

Before the Court is Plaintiffs Noah D. ("Student"), by and through his Parent, Lisa D's ("Mother") appeal from the Administrative Hearings Officer's ("Hearings Officer") July 11, 2012 Remanded Decision ("Decision"), pursuant to the Individuals with Disabilities Education Act of 2004 ("IDEA"), 20 U.S.C. § 1400 *et seq*. The court heard oral arguments on July 1, 2013. After careful

1

consideration of the supporting and opposing memoranda, and the arguments of counsel, the July 11, 2012 Decision is HEREBY REVERSED and REMANDED for the reasons set forth below.

## BACKGROUND

The instant appeal is before the court following a remand from this district court in Civil No. 10-297 AWT-BMK, directing the Hearings Officer to determine whether Defendant the Department of Education, State of Hawaii ("DOE" or "Defendant") violated the IDEA by materially failing to implement Student's July 30, 2009 Individualized Education Program ("IEP"). The following facts are taken from the Hearing Officer's Decision and were not specifically disputed on appeal.

During the relevant time period, Student was six years old and eligible for services under the category of autism. Student was in kindergarten at Pukalani Elementary School, his home school, and attended both general and special education classes. Student's July 30, 2009 IEP provided the following services: 1830 minutes per week of special education, 540 minutes of speech-language therapy per quarter, and 40 minutes of occupational therapy services per quarter. The IEP also provided for a professional to work with Student and his family at home and in the community for 5 hours per school week, parent education, and a 1:1

paraprofessional for his 1830 minutes per week of special education.   Student also received extended school year ("ESY") services, and had opportunities to interact with his general education peers during recess, selected classroom activities, and school wide events.   Decision at 4–5.

At the time the IEP was implemented, all parties understood that the special education and related services would be provided during a five-day school week.   In October of 2009, however, the DOE implemented furloughs occurring roughly every-other-Friday as a result of state budget shortfalls.   On "furlough Fridays," Student's school was closed and neither general nor special education students attended.   According to Mother, prior to the implementation of furloughs, the DOE did not provide any alternatives for Student, and at no time did she agree to the four-day school week because Student needed to be with peers socially and academically.   There was no IEP meeting or prior written notice ("PWN") before the first furlough Friday.   Decision at 6.

As the date approached for the implementation of furloughs, the DOE did not have any additional plan in place for Student, so Mother hired Catherine Taylor, a DOE special education teacher, and Justin Tanaka, a DOE paraprofessional, to provide a home-based program for Student on furlough Fridays. Taylor was already working with Student at home for several hours a week as his

behavior intervention specialist, and Tanaka was working with Student as a skills trainer at the home school, as provided for in the IEP. On furlough Fridays, Student worked during the day at his home with Taylor and Tanaka, and did not have the opportunity to mainstream with his regular education peers. Decision at 4–6, 8.

The parties dispute the effect of the furloughs on Student's academic and social progress. Following the implementation of furlough Fridays, Mother contends that Student significantly regressed academically and behaviorally. According to Taylor, Student was frustrated and anxious after the implementation of furloughs, and she observed a slow deterioration in his skills. Student's maladaptive behaviors and regression increased, and Student became less able to socialize with his siblings and family. He had more difficulty managing his behavior, and he hit and head-butted Taylor. According to Mother, most of Student's regressive behavior occurred when he was out of school, and not being in school on furlough days caused compliance issues at home, including hitting, screaming, crying, and running away. On furlough days, Student asked why he was at home instead of in school. Decision at 6–7.

Other DOE employees, however, opined that Student was doing just as well behaviorally, socially, and academically at school after furloughs were implemented. Following the onset of furloughs, on December 17, 2009, the DOE

4

offered to extend Student's services on Mondays through Thursdays to make up for the lost time on furlough Fridays, and to provide the services of a behavior intervention specialist and skills trainer on Fridays, but Plaintiffs rejected this later offer.  Decision at 6–9.

A hearing on Plaintiff's due process request was held on March 1, 2010, and on April 20, 2010, the Hearings Officer ruled that the DOE materially failed to implement Student's IEP as a result of the furloughs.  The DOE appealed the April 20, 2010 Decision to this district court in Civil No. 10-297 AWT-BMK.  The district court reversed the April 20, 2010 Decision and remanded to the Hearings Officer, finding that the Hearings Officer did not properly apply the materiality analysis required by *Van Duyn v. Baker School District 5J*, 502 F.3d 811 (9th Cir. 2007).  The district court noted that the Hearings Officer "failed to make specific findings or conclusions as to whether [Student] received all of the instructional time in the IEP and whether the difference was a material failure." *Dept. of Educ., State of Hawaii v. N.D*, Civ. No. 10-297 AWT-BMK, Dec. 14, 2011 Findings & Recommendation at 9 (dkt. no. 46).

Upon remand, the Hearings Officer concluded that the DOE failed to implement specific provisions of the IEP, but that the DOE did not materially fail to

5

implement Student's IEP under the *Van Duyn* standard. The Hearings Officer ruled that:

> Based upon the teachers' and school personnel testimony regarding Student's educational progress after furlough Fridays had commenced, it has not been shown that there was more than a minor discrepancy between the services provided to Student after furlough Fridays and the services offered in Student's July 30, 2009 IEP.

Decision at 13. The instant appeal followed.

## STANDARD OF REVIEW

The standard for district court review of an administrative decision under the IDEA is set forth in 20 U.S.C. § 1415(i)(2)(C), which provides:

> In any action brought under this paragraph, the court—
> (i) shall receive the records of the administrative proceedings;
>
> (ii) shall hear additional evidence at the request of a party; and
>
> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

This standard requires that the district court give "'due weight'" to the administrative proceedings. *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 908 (9th Cir. 2009) (quoting *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)) (some citations omitted). The district court, however, has the discretion to determine the amount of deference it will accord the

administrative ruling. *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438 (9th Cir. 2010) (citing *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987)). In reaching that determination, the court should consider the thoroughness of the hearings officer's findings, increasing the degree of deference where said findings are "'thorough and careful.'" *L.M. v. Capistrano*, 556 F.3d at 908 (quoting *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995)). The district court should give "substantial weight" to the hearings officer's decision when the decision "evinces his careful, impartial consideration of all the evidence and demonstrates his sensitivity to the complexity of the issues presented." *Cnty. of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1466–67 (9th Cir. 1996) (citation and quotation marks omitted). Such deference is appropriate because "if the district court tried the case anew, the work of the hearing officer would not receive 'due weight,' and would be largely wasted." *Wartenberg*, 59 F.3d at 891.

The burden of proof in IDEA appeal proceedings is on the party challenging the administrative ruling. *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1103 (9th Cir. 2007) (citations omitted). The challenging party must show, by a preponderance of the evidence, that the hearing decision should be reversed. *J.W.*, 626 F.3d at 438 (citation omitted).

# **DISCUSSION**

**I.     Materiality Under *Van Duyn***

The issue on remand was limited to the application of the materiality standard set forth by the Ninth Circuit in *Van Duyn*.  That case involved a difficult transition from elementary to middle school for a severely autistic student.  In *Van Duyn*, the plaintiffs argued that the school district failed to implement key portions of the student's IEP, including required math instruction, a behavior management plan, and placement in a self-contained special education classroom.  The Ninth Circuit affirmed the district court's ruling that the school district was liable for a "material implementation failure" when it undershot, by five hours, the IEP requirement of eight to ten hours of math instruction per week, but did not materially fail to implement other portions of the IEP.  502 F.3d at 823–25.

The Ninth Circuit set forth the following explanation of a "material failure to implement an IEP" that violates the IDEA:

> A material failure occurs when there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP.  Because the parties debate whether Van Duyn's skills and behavior improved or deteriorated during the 2001–02 school year, we clarify that the materiality standard does not require that the child suffer demonstrable educational harm in order to prevail.  However, the child's educational progress, or lack of it, may be probative of whether there has been more than a minor shortfall in the

8

> services provided. For instance, if the child is not provided the reading instruction called for and there is a shortfall in the child's reading achievement, that would certainly tend to show that the failure to implement the IEP was material. On the other hand, if the child performed at or above the anticipated level, that would tend to show that the shortfall in instruction was not material. We also emphasize that nothing in this opinion weakens schools' obligation to provide services "in conformity with" children's IEPs. § 1401(9). IEPs are clearly binding under the IDEA, and the proper course for a school that wishes to make material changes to an IEP is to reconvene the IEP team pursuant to the statute—not to decide on its own no longer to implement part or all of the IEP. *See* §§ 1414(d)(3)(F), 1415(b)(3).

*Id.* at 822.

Applying this standard, the Ninth Circuit concluded that the school district did not violate the IDEA. First, although the IEP required eight to ten hours per week of math instruction, the student did not initially receive all of those hours and the ALJ ordered that he receive the five hours per week that he had not been receiving. The Ninth Circuit agreed that the five-hour shortfall was a material implementation failure, but ruled that "after the District's corrective actions, there was no material failure to provide Van Duyn with the required amount of weekly math instruction." *Id*. at 823.

Next, the court concluded that, although several elements of Van Duyn's behavior management plan were not implemented in the same way at the middle school as at the elementary school, these failures were not "material"

9

because the IEP did not require that the behavior management plan be implemented identically at the two schools. The court noted that there was evidence that the elementary school behavior management plan was inappropriate for a middle school context, and moreover, Van Duyn's behavior appeared to improve following the change. *Id.* at 823–24.

Last, the Ninth Circuit considered Van Duyn's argument that his IEP required that he be placed in a self-contained special education classroom, a single classroom in which disabled students receive instruction individually or in small groups with much flexibility in timing and content. The Ninth Circuit held that the school district did not materially fail to provide him with a self-contained classroom in middle school where his class size varied, there was always one teacher and one aide present, and there was substantial flexibility in instruction. The court noted that his middle school schedule "may not have been quite as beneficial a learning environment as the elementary school, but we cannot conclude that it constituted a material failure to provide Van Duyn with a self-contained classroom." *Id.* at 825. In sum, the Ninth Circuit concluded that:

> A material failure to implement an IEP occurs when there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP. Applying that standard here, the services the District provided were not materially different from what was

required by the IEP (again with the exception of the math instruction provided prior to the ALJ's order).

*Id.* at 826.

## II. **Furloughs Constituted a Material Change in Student's Program**

Turning to the facts of the instant case, the parties dispute whether the implementation of furlough Fridays in October 2009 constituted a material change in Student's education program. The Hearings Officer found that the DOE failed to implement specific provisions of Student's July 30, 2009 IEP, but concluded that it was not a material failure because Plaintiffs did not show "that there was more than a minor discrepancy between the services provided to Student after furlough Fridays and the services offered in Student's July 30, 2009 IEP." Decision at 13. The Court disagrees.

First, the Court notes that there is no challenge to the Hearings Officer's determination that:

> The DOE failed to implement specific provisions of Student's July 2009 IEP as during furlough Fridays, the school week was shortened to a 4 day school week, but the IEP was created for a 5 day school week. Except for speech-language services (which were not provided on Fridays), the implementation of furlough Fridays caused Student to receive less special education, related services, and supplemental aids and services. Additionally, during furlough Friday weeks, Student's opportunities to generalize with non-disabled peers was also reduced.

11

*Id.* Although the parties could not provide a definitive count at the hearing, it appears that 18 furlough days were planned for the 2009–2010 school year, and that either 11 or 12 had occurred by the time the matter was heard by the Hearings Officer on March 1, 2010. The Court reaffirms the Hearings Officer's conclusion that the DOE failed to implement portions of the July 30, 2009 IEP for the reasons stated in the Decision.

      Next, the Court turns to whether the implementation of furlough Fridays was a material failure under *Van Duyn*. Plaintiffs contend that one of the key pieces of the IEP is removing Student's emotional and communication barriers and that, because Student is autistic, he requires continuity and stability in his education program. Plaintiffs persuasively contend that the failure to implement the IEP as written was particularly significant here because of Student's specific challenges associated with his autism, including resistance to change or change in daily routines. That is, the failure to implement the IEP materially affected a core feature of Student's disability and his particular educational needs.

      This failure is underscored by the effects it had on Student. As discussed above, although the materiality standard does not require that the child "suffer demonstrable educational harm in order to prevail," a "child's educational progress, or lack of it, may be probative of whether there has been more than a minor

shortfall in the services provided." *Van Duyn*, 502 F.3d at 822.  With respect to the effect of furloughs, the parties do not dispute that Noah's behavior regressed at home.  As the Hearings Officer noted, "Student was more physical and pushed the behavior intervention specialist.  Normally, Student does not hit. . . .  Student had more difficulty managing his behaviors, screamed more, and grabbed, hit, and head-butted the behavior intervention specialist."  Decision at 6.  There was evidence at the hearing that Student's maladaptive behavior increased after the implementation of furloughs.  For example, Mother testified that in November 2009, Student "started hitting a lot more" at home, was less tolerant about being around his younger siblings, and that he head-butted a teacher at school as well as a stranger during a shopping trip.  ROA 3/1/2010 Tr. at 117–18, 130.

Tanaka, the skills trainer who worked with Student at school and at Student's home on furlough Fridays, testified that he saw Student hit a classmate at the school playground twice on November 5, 2009, shortly after the implementation of furlough Fridays.  ROA 3/1/2010 Tr. at 86.  Taylor testified that Student became more physical, pushed her while at a playground, had more trouble transitioning from one activity to another, and started backtracking in terms of his ability to manage his own behavior.  ROA 3/1/2010 Tr. at 36, 40–41, 44.  Taylor also stated that "whatever they were working on in school, we couldn't carry it over

13

at home, even if we had the materials, because he was having difficulty focusing on them." ROA 3/1/2010 Tr. at 52. Taylor and Tanaka were DOE employees hired by the family for supplemental education on furlough Fridays, which is significant because the evidence of regression was not based on Mother's recollection alone.

The DOE responded to this uncontroverted evidence by positing that "the DOE is responsible for addressing a student's maladaptive behaviors in the school setting; [] a student's behavior at home is only relevant if it affects the student's educational performance." Decision at 12. The DOE's effort to constrain its responsibilities and this Court's materiality measures, as reflected in *Van Duyn*, is unavailing. Even assuming that the DOE's responsibility is so constrained, the DOE was responsible for providing the placement and services set forth in the IEP, including a home-based program. The IEP services included not only 1830 minutes per week of special education services at the home school, but also supplementary aids and services outside of the classroom. The IEP provides for a "Professional to work with Noah and family at home and in the community" for five hours per school week. 7/30/09 IEP at 12 (ROA Respondent's Exhibits at ND 050). The IEP states:

> Family counseling will be provided in the home for 810 min per quarter from 8/3/2009- until the [sic] of this IEP. During

14

> Summer 6/4/2009-8/3/2009, services will be provided [for] 360 min.
>
> An In home Professional will be working in the home and in the community for 5 hours per school week with Noah and his family.

7/30/09 IEP at 13 (ROA Respondent's Exhibits at ND 051).  In this case, the IEP clearly provided for a home program, and regression in the home setting is relevant to the analysis of materiality.  The Hearings Officer therefore erred in discounting Student's behavior at home.

Even assuming that Student's behavior remained unchanged in school as the Hearings Officer concluded, this Court, looking at the entirety of the record, finds that Plaintiffs have sufficiently established that Student suffered demonstrable educational harm as a result of the failure to implement the IEP.  For example, the Hearings Officer found that:

> Because of furlough Fridays, Student's maladaptive behaviors increased and his regression increased. . . .  Not being in school leads to compliance issues at home, such as hitting, screaming, crying, jumping up and down, and running away.  After furlough Fridays were implemented Student started hitting others and himself.  Student also engaged in self-stimulating activities such as chinning (applying pressure to his chin) to calm himself.  After furlough Fridays were implemented Student had more difficulty transitioning to activities.

Decision at 6–7.

Here, the implementation of furloughs was more than a minor discrepancy and violated the IDEA. The loss of 11 to 12 school days, and equally important, the disruption of the consistency of Student's educational program, prevented several IEP provisions from being implemented, including mainstreaming, socialization, and communication. Student's behavior program was not fully implemented and he could not receive the continuity of educational opportunities, services, and aids provided for in the IEP. The Court concludes that the failure to implement Student's July 30, 2009 IEP was material under the standard set forth in *Van Duyn* and denied Student a free appropriate public education. Accordingly, the Hearings Officer's decision to the contrary is hereby REVERSED, and Plaintiffs are the prevailing party.

To the extent Plaintiffs seek compensatory education or any additional remedy, the matter is REMANDED to the Hearings Officer for such a determination in the first instance.

## **CONCLUSION**

On the basis of the foregoing, the Hearings Officer's July 11, 2012 Findings of Fact, Conclusions of Law and Decision is REVERSED, and the matter

Case 1:12-cv-00459-DKW-RLP   Document 34   Filed 08/20/13   Page 17 of 17   PageID #: 247

is REMANDED to the Hearings Officer for any necessary determination of the appropriate remedy.

IT IS SO ORDERED.

DATED: HONOLULU, HAWAIʻI, August 20, 2013.



Derrick K. Watson
United States District Judge

In the Matter of Noah D., by and through his Parent, Lisa D., v. Department of Education, State of Hawaii; CV. 12-459 DKW RLP; ORDER REVERSING AND REMANDING THE ADMINISTRATIVE HEARINGS OFFICER'S JULY 11, 2012 FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECISION